IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:19-cr-57 |
| v. | ) | |
| | ) | The Hon. Liam O'Grady |
| YOUNG YOO, | ) | |
| | ) | Sentencing Date: Sept 12, 2022 |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES**
**WITH RESPECT TO SENTENCING**

The defendant, Young Yoo, comes before the Court for sentencing after being convicted at trial on a number of counts, all of which charge him for the violent acts and drug trafficking that he committed in furtherance of a racketeering organization, the Reccless Tigers, including his role in the brutal kidnapping and murder of Brandon White. The United States has reviewed the Presentence Report and concurs with the findings of the Probation Office, including that the defendant must be sentenced to life imprisonment based on his convictions for engaging in murder in aid of racketeering activity (Count 3) and kidnapping resulting in death (Count 5). For the reasons stated herein, the United States respectfully submits that a sentence of life imprisonment is reasonable and appropriately punishes the defendant for his role in the brutal kidnapping and murder of Brandon White.

I.     Factual and Procedural Background

The Federal Bureau of Investigation ("FBI") and the Fairfax County Police Department ("FCPD") began investigating members of the Reccless Tigers and its affiliated gangs several years ago because members were suspected of distributing significant quantities of marijuana and other controlled substances and of engaging in violent acts. Law enforcement developed a few

confidential informants who were able to purchase controlled substances from co-defendants Peter Le, Anthony Nguyen Thanh Le, Dane Nicholas Hughes, and Spencer Pak. During this time, law enforcement continued to investigate Reccless Tigers members for their involvement in fire bombings, assaults, and a murder that took place at one of the gang's house parties in April 2016.

The abduction and murder of Brandon White on January 31 and February 1, 2019, dramatically changed the investigation. Beginning on February 15, 2019, and continuing through October 31, 2019, the United States charged a number of Reccless Tigers members, including the defendant, and other individuals associated with them in an effort to disrupt and dismantle the gang, prevent further violence, and develop evidence necessary to prosecute those involved in Brandon White's murder and other violent gang activities.

A.     Background on the Reccless Tigers Gang

The Reccless Tigers is a street gang that operated in Northern Virginia but also had connections elsewhere, including Richmond, Virginia; North Carolina; Texas; Las Vegas, Nevada; and Northern and Southern California.[1] Co-defendants Richard Pak, Tony Le, and Joseph Lamborn founded the Reccless Tigers gang in and around 2011. After its founding, the gang flourished and grew to over 100 members and associates. The gang was also affiliated with the powerful Asian Boyz gang, a California-based street gang.

Reccless Tigers members primarily earned money by selling illegal controlled substances, particularly marijuana and marijuana products, such as vape pens and edibles containing

---

[1] As used here, the term Reccless Tigers includes predecessor and affiliate gangs such as the Asian Boyz (a/k/a ABZ), Young Korean Loks (a/k/a YKL), Korean Dragon Crew (a/k/a KDC), Sons of Gong (a/k/a SOG), Club Tiger, Tiger Side, and Lady Tigers (a/k/a Lady Ts).

tetrahydrocannabinol ("THC"). The gang also trafficked in cocaine and, to a lesser extent, prescription medications. Reccless Tigers members shipped most of the marijuana and THC products from locations in California to locations in the Eastern District of Virginia. Gang members actively sold large quantities of marijuana and THC products to students located in various high schools in Northern Virginia. Gang members also actively recruited high school students to join the gang and distribute controlled substances.

The Reccless Tigers, through co-defendant Tony Le, invested in marijuana grow operations in California. One such operation, dubbed "the farm," was located near Hayfork, California, and was owned and operated by co-defendant Joshua Miliaresis. In 2017, Tony Le paid Miliaresis for a share of the marijuana produced at the farm. Beginning in mid-2017, Peter Le and Tony Le sent a number of gang members to the farm to work off drug debts. Others went simply because they thought it would be fun and a way to make some money. Information obtained from cooperating witnesses who had been to the farm, along with information gleaned from social media postings from gang members working on the farm (including videos and photographs) led to the execution of federal search warrants on July 24, 2019, on seven parcels of land near Hayfork, a town in north-central California. Agents eradicated thousands of marijuana plants found on these properties. *See* Stipulation Concerning Marijuana Plants.

The growth of the gang's drug business was matched by an increase in violent crimes by its members. Most of the earliest reports of gang violence were fights at predominately Asian clubs and restaurants, high schools, parks, shopping malls, bowling alleys, and other public venues. Some of the fights occurred between fellow gang members. These include simple assaults, malicious woundings, gang fights, burglaries, robberies, extortion, abductions, shootings,

attempted homicides, and two homicides. Much of the violence committed by gang members occurred over drug debts, including drug debts owed by one gang member to another and drug debts owed by a non-member to a gang member. When threats and beatings proved ineffective in collecting the debts, the violence escalated to fire bombings of residences.

Reccless Tigers members are also responsible for two homicides. The first homicide, which remains unsolved, occurred at one of the gang's house parties, which was held at an Airbnb rented by the defendant in April 2016. The defendant was one of the hosts and present at the party. During the party, one of the guests (the "Victim") began arguing with a gang member. The argument turned into a brawl, during which numerous gang members attacked the Victim. The Victim was stabbed in the chest during the fight, and he then left the party with friends unaware that he had life-threatening injuries. He died later that night at his home.

The second homicide occurred on February 1, 2019. The victim, Brandon White, owed the defendant several thousand dollars for marijuana that he had obtained in and around 2013-14. Co-defendant David Nguyen assaulted Brandon over this drug debt on August 8, 2018, which resulted in Brandon sustaining serious injuries that required hospitalization. *See* Government Exhibit (GE) 6-12. The FCPD subsequently arrested Nguyen and charged him with robbery and malicious wounding. As Nguyen's criminal case progressed, gang members became aware that Brandon had been subpoenaed to testify against Nguyen at a preliminary hearing. In response, the defendant attempted to pay Brandon in return for him refusing to cooperate in Nguyen's prosecution. *See* GEs 4-3, 4-4, 4-14. Gang members also threatened to kill Brandon if he testified. Brandon refused the gang's offer, and he testified against Nguyen on November 19, 2018. *See* GE 5-7C, D. Less than two and a half months later, the defendant, Peter Le, and Joseph Lamborn made good on their

threat by murdering Brandon. We will further discuss this murder below.

    B.    <u>The Defendant's Role in the Gang</u>

The defendant was one of the longest serving and most committed gang members. Due to his close relationship with Spencer Pak, he was familiar with the origins of the Reccless Tigers gang. His friendship with Spencer Pak provided him access to controlled substances at a very young age and he began distributing drugs by 2013, when he was 16 or 17 years old. During this early period, the defendant also possessed firearms in furtherance of his drug trafficking. In and around this period, the defendant supplied Brandon White with marijuana and threatened Brandon over his drug debt.

In the following years, the defendant established himself as one of the main gang members. While he was not a leader, he was a strong presence in the gang, took part in assaults with Spencer Pak, and was very active on social media. And through his social media accounts, the defendant consistently conveyed that he was armed with assault rifles and pistols. Over the years, the defendant had several interactions with law enforcement, including in 2013 and twice in 2016. The interactions were drug and firearm related. Finally in 2017, the defendant was convicted of felony drug trafficking. Undeterred, the defendant continued distributing controlled substances and possessing firearms. Indeed, the defendant ran the Tigerterpz Instagram account, which contained countless posts devoted to selling marijuana and THC products, and Tiger gang messaging. And he engaged in drug trafficking and possessing firearms despite being on supervision for his 2017 felony conviction.

Moreover, the defendant had firsthand knowledge that gang members threatened and even murdered an individual. In April 2016, he rented an Airbnb and co-hosted a Tiger house party. His

own friend was murdered at this party. The defendant, however, remained committed to the gang and furthering its drug trafficking and violent goals.

Most importantly, the defendant is the reason that Brandon White was murdered. As further explained below, Brandon owed the defendant a drug debt. And even after nearly five years, the defendant would not forgive Brandon's debt, which he incurred while he was a juvenile. It was the defendant that directed David Nguyen to assault Brandon. This assault resulted in Nguyen's arrest and conviction. In response, gang members blamed the defendant for Nguyen's conviction. The defendant — no doubt, desperate to maintain and increase his position in the gang — made the decision to kidnap and murder Brandon. Peter Le and Joseph Lamborn joined the defendant in this brutal murder; however, the defendant and his choices are what led to the motive for murdering Brandon.

Gang members are known for committing violence against other gang members, and the Tigers organization was no different. On December 27, 2017, internal gang tensions between Peter Le, the defendant, Sang Huynh, and other gang members boiled over and were on public display near the Way of Ink Tattoo parlor in Springfield, Virginia. Leading up to that day, committed Tiger Side members, including the defendant and Sang Huynh, took issue with Peter Le and his Club Tiger recruits, who Tiger Side members viewed as weak. The dispute escalated when Club Tiger members were seen "throwing up gang signs." Peter Le, with something to prove, headed to the Way of Ink with a bat in hand. He also asked his Club Tiger members to join him, and several were nearby in parked cars waiting for a signal. Unfortunately for Peter Le, the defendant, Sang Huynh, and the other gang members outnumbered him, and they quickly took the bat from his possession and turned it on him, badly beating him in the process. GEs 5-9 to 5-12. The defendant

6

can be clearly seen on the video footage violently beating Peter Le. Thus, there is no doubt that the defendant is more than capable of coldblooded violence.

Ultimately, FBI agents broke up this internal gang dispute, when an agent jumped from a van in the parking lot. After this day, gang members knew that the FBI was investigating their activities.

Over the course of 2017 and 2018, most of the successful drug traffickers and/or violent gang members, including Peter Le, the defendant, Sang Huynh, Joseph Lamborn, Soung Park, and David Nguyen declared their loyalty to Tony Le by joining Tiger Side. Tiger Side became the more active and violent face of the Tiger organization, with countless social media posts advertising the sale of marijuana and vapes and declaring that revenge would be taken on snitches. *See, e.g.,* GE 2-4.

Thus, in the fall of 2018 and early 2019, the most prolific drug traffickers and violent members of the Tiger organization resided in Tiger Side, Tony Le's organization. The defendant, Peter Le, and Lamborn were all members, and each had something to prove to other members. On a fateful day in late January, all three decided to prove themselves when they kidnapped and brutally murdered Brandon White.

       C.     <u>The Kidnapping and Murder of Brandon White</u>

Brandon White was a 21-year-old male, a son, a grandson, a brother, and full of life. He meant everything to his mother and family. The defendant, Peter Le, and Lamborn kidnapped and murdered Brandon during the late evening of January 31, 2019. They murdered Brandon because he had the audacity to comply with a Fairfax County subpoena and testified against gang member David Nguyen, who ruthlessly assaulted and maimed him over a drug debt that he owed to the

defendant.

The FBI's first contact with Brandon followed a shooting incident on June 25, 2018. FCPD officers had responded to reports of a shooting near Falls Church. When the police arrived, they took reports from witnesses, including Brandon. The police learned that the shooting was the result of an argument involving drugs, and that two Reccless Tigers gang members had shot at a group of people from their vehicle. The Reccless Tigers members were later arrested on Fairfax County charges for this incident. One of these gang members ("Gang Member 1") hired attorney Kaveh Noorishad as his defense counsel.

The FBI's first interview with Brandon about the June 25 shooting incident was on July 26, 2018. Brandon confirmed what the other witnesses had told police about the shooting and provided additional information about the Reccless Tigers. He also admitted to selling marijuana for the defendant from 2013 to 2014. Brandon stated that the defendant was a high-level member of the Reccless Tigers. He further explained that, when distributing marijuana for the defendant, the defendant had hit him in the face, saying, "it's discipline," because he owed the defendant money for marijuana.

After this interview, on or about August 8, 2018, the FCPD responded to a 911 call of an assault near Merrifield, Virginia. The 911 caller reported that her friend was coughing up blood after being assaulted by an Asian male, who had immediately left the scene. A male was heard in the background crying. On the way to the scene, FCPD officers observed two men leaving the general area of the assault. One was an Asian male, later identified as David Nguyen, with minor scrapes to the tops of his hands, consistent with injuries sustained from punching. The other man was later identified as well (CW-1). David Nguyen, a/k/a DD, is a member of the Reccless Tigers,

8

and CW-1 had been purchasing marijuana Nguyen, whom he knew was a gang member.

Brandon was the victim of the assault. Brandon told the FCPD officers that he was hanging out with several friends, including CW-1, when the group drove to Nguyen's residence in Fairfax because CW-1 wanted to purchase marijuana. Once at the residence, CW-1 exited the car; everyone else remained in the vehicle. When CW-1 returned to the vehicle, he was with Nguyen. CW-1 and Nguyen entered the vehicle, and Nguyen confronted Brandon, telling Brandon that he knew that Brandon used to sell for the defendant (YG) and that he (Nguyen) is the defendant's partner. Nguyen told Brandon that he had just been released from jail and demanded all his money. Nguyen also threatened to strip Brandon if Brandon did not give him all his money. Nguyen told Brandon that he (Nguyen) had a gun and knife and could shoot and stab him. Nguyen also told Brandon, "you decide." Brandon stated that he handed Nguyen about $83 dollars.

According to Brandon, the group then went to a street near Merrifield, where CW-1, Nguyen, and Brandon got out of the car. Nguyen used his cell phone to call someone, and Nguyen confirmed with the person whom he had called that Brandon owed someone money. The person on the phone wanted Nguyen to get the money from Brandon. Nguyen then asked the person on the phone whether he should assault Brandon. Nguyen got the go ahead from the person on the phone and started fighting Brandon. Soung Park testified that he was present when Nguyen called the defendant and that the defendant provided Nguyen permission to assault Brandon. CW-1 testified that Nguyen attacked Brandon and continued to assault him until several of them pulled Nguyen off Brandon, who was on the ground. One of the witnesses called 911. Brandon was later transported to the hospital. He suffered a broken orbital bone, bruised ribs, a bloody nose, and other injuries from the attack. *See* GE 6-12.

A short video recording of the assault was found on Nguyen's cell phone. *See* GE 5-6. The video shows Nguyen kicking and stomping on Brandon's head. In the background, a female voice is heard saying "stop it David."

FCPD officers arrested Nguyen shortly after the attack and he was detained at the Fairfax County Detention Center. He was charged with malicious wounding and strong-armed robbery. After the attack on Brandon, the defendant — through others — attempted to pay Brandon money in exchange for Brandon refusing to cooperate with law enforcement's prosecution of Nguyen.

In early September 2018, CW-1 testified that he contacted Brandon via Snapchat. CW-1 told Brandon that someone wanted to speak with him. Kaveh Noorishad then spoke to Brandon and informed Brandon that he (Noorishad) was Nguyen's attorney, and Noorishad wanted to see if Brandon was willing to settle for a little cash and not prosecute Nguyen. Noorishad informed Brandon that he would not be paid $10,000 or $15,000, but he wanted to see if he was willing to settle for $5,000. According to Brandon, during this video communication, Noorishad advised him that he would get $5,000 and his debt to "the Asians" from 2013 would also go away. Ultimately, Brandon did not agree to the $5,000 payment because his hospital bills were more than $74,000.

Brandon was subpoenaed to testify on September 19, 2018, at Gang Member 1's preliminary hearing for the shooting incident that he witnessed on June 25, 2018. Before the hearing, Brandon was sitting with a friend when Brandon noticed Noorishad speaking to the gang member. Noorishad then approached Brandon and asked if he would settle with the defendant for $10,000. Brandon refused. Brandon did not have to testify at the hearing because the charges against Gang Member 1 were dropped.

On September 25, 2018, Brandon was at the Fairfax County courthouse to testify at

Nguyen's preliminary hearing for attacking him. Brandon was sitting in the hallway of the courthouse when Noorishad approached him. Noorishad advised Brandon that he (Noorishad) was authorized by "YG" (the defendant) to make a deal with him. Noorishad informed Brandon that he would get a certain amount for pain and suffering and that his debt owed to YG would go away. Brandon then showed Noorishad his hospital bill. Noorishad advised him that "they" (which Brandon took to mean the Reccless Tigers) could not afford that much. Noorishad told Brandon to be realistic and give Noorishad a real number. Noorishad then told Brandon to think about it and to give Noorishad a call. FBI Special Agent Joseph Hoang was seated close to Brandon and overheard this conversation between Noorishad and Brandon. Brandon did not testify on September 25, 2018, because the hearing was continued.

On November 7, 2018, Brandon told the FBI that on November 6, 2018, two individuals, including CW-2, went to the hospital to visit him and his girlfriend, who had just had a baby. CW-2 and the other individual arrived separately, with the other individual arriving first. After CW-2 arrived at the hospital, CW-2 informed Brandon that he better not show up to the Tigers case (referring to Nguyen's preliminary hearing) and that if he went to that court date, he may be murdered. CW-2 further testified that Gang Member 1 sent him to hospital because Gang Member 1 wanted him to persuade Brandon not to testify.

Brandon's brother, who was also in the hospital room at that time, kicked Brandon, CW-2, and the other individual out of the room. According to Brandon and CW-2, who testified at trial, CW-2, the other individual, and Brandon walked outside to the parking lot of the hospital. CW-2 then used his cell phone and handed the phone to Brandon. CW-2 formed Brandon that it was one of the Tigers, KO, on the phone and that KO wanted to talk to him (Brandon). Once on the phone,

KO told Brandon that his "boy" (meaning Nguyen) was facing 15 years and if he gets those 15 years, then KO was coming after him (Brandon) and his (Brandon's) grandmother, baby, and wife. KO also told Brandon that he (Brandon) "fucked" KO over once in 2014 and Brandon was trying to "fuck" him (KO) over again and get his "boy" 15 years. KO offered to pay Brandon between $5,000 and $7,000 if he did not testify against Nguyen. At trial, CW-2 identified a photo of KO, who was identified at trial as co-defendant Zu Hun Chang (a/k/a Kyo and Monster), a member of the Reccless Tigers.

Ultimately, Brandon was subpoenaed to testify at Nguyen's preliminary hearing in Fairfax County Circuit Court on November 19, 2018. Brandon testified and identified Nguyen as the person who assaulted him on August 8, 2018. *See* GE 5-7C, D.

On December 20, 2018, during the execution of a search warrant by FCPD in connection with an unrelated fentanyl overdose death, FCPD recovered a hand-written letter believed to have been written by David Nguyen to his girlfriend, CW-3 (the sister of the overdose victim). *See* GE 30-2A. The letter was found with a copy of the FCPD police report of the August 8, 2018 assault of Brandon by Nguyen. *See* GE 30-2B. There are handwritten notes on the report. The FCPD report revealed that Brandon had previously spoken with the FBI about the June 25, 2018 shooting incident. In the hand-written letter, Nguyen made a specific request that CW-3 take a picture of the police report and send it to members of the Reccless Tigers to put on Instagram and Snapchat to show the members of 43rd gang that "LiL Beheem" (Brandon's nickname) was a "snitch" and to have the 43rd "check" Brandon. In the letter, Nguyen specifically told CW-3 to send a picture of the police report to the "fat homie."[2]  Law enforcement know that Gang Member 1 is the "fat

---

[2]  The Fairfax Commonwealth Attorney's Office provided the report to Noorishad prior to

homie."

Then, in or around late January 2019, a few days before Brandon was abducted and murdered, Peter Le contacted CW-4. CW-4 testified that Peter Le informed him that some of Peter Le's boys would pick up CW-4's Mercedes Benz. CW-4 was one of Peter Le's marijuana customers and, at that time, owed Peter Le about $60,000 for marijuana that police seized. Because of that debt, in 2018, Peter Le demanded that CW-4 register the Mercedes Benz and two other cars in CW-4's name, which he did. The defendant then directed CW-4 to "loan" the cars to Reccless Tigers members.

Also, during late January 2019, co-defendants Abdullah Sayf and Fahad Abdulkadir had a conversation. Sayf told Abdulkadir that he recently saw Dane Hughes, who worked for Peter Le, with three or four other Reccless Tigers in Sayf's neighborhood. Abdulkadir told Sayf that Abdulkadir's "OG," Savage (Peter Le) was after Sayf for a drug debt. Abdulkadir told Sayf that they could clear their drug debts to the Reccless Tigers by delivering Brandon White to Savage. The plan laid out by Abdulkadir was to get Brandon to meet them, and then they would take Brandon to Peter Le. Abdulkadir testified that the Reccless Tigers were planning on beating up Brandon because he was snitching on the Reccless Tigers. Sayf had been friends with Brandon and had obtained Percocet pills through Brandon in the past, so Abdulkadir thought Sayf would be able to contact Brandon. The plan was to set up Brandon that same day (January 29); however, Brandon did not respond to Sayf's messages. Sayf stated that he finally got in contact with Brandon

---

Nguyen's preliminary hearing. As noted, Noorishad represented both Nguyen and Gang Member 1 on their Fairfax County charges. Noorishad also told Brandon that he represented "YG" (the defendant).

on January 31, 2019. Sayf told Brandon that he was interested in getting Percocet, which Sayf knew Brandon could obtain. Brandon told Sayf that he had a Percocet supplier in Washington, D.C., and Sayf said that he would pick up Brandon later that evening.

On January 31, 2019, at approximately 7:00 p.m., Sayf and three others picked up Abdulkadir at his girlfriend's residence. On January 31, 2019, at 9:52 p.m., Abdulkadir sent a text message to his girlfriend that he was going to get the "car." Abdulkadir, Sayf, and the three others arrived at CW-4's house in the Fair Lakes area at approximately 10:00 p.m. CW-4 testified that Abdulkadir, Sayf, and others, arrived at his house in a van to pick up the Mercedes Benz. CW-4 provided the car keys to Abdulkadir and Sayf, and they drove off in the Mercedes Benz. The other individuals left separately in the van.

Then at approximately 10:46 p.m., a surveillance camera captured Brandon leaving his grandmother's house. A video surveillance camera near Brandon's grandmother's house showed a dark-colored Mercedes Benz pulling up and Brandon getting into the rear passenger seat. Then, at 10:53 p.m., an exterior video surveillance camera at the Exxon gas station at 7269 Arlington Boulevard adjacent to Loehmann's Plaza recorded a video of a black Mercedes Benz pulling into the station with Abdulkadir and Sayf in the front seat and Brandon in the rear seat. At 10:59 p.m., the Exxon's interior video surveillance showed Brandon, Abdulkadir, and Sayf inside the Exxon station, where they purchased antifreeze and two quarts of motor oil. At 11:20 p.m., the Exxon's exterior video camera showed the three men pushing the Mercedes Benz away from the Exxon until it goes out of camera range.

Further, Abdulkadir testified that he called Peter Le when he was at the Exxon station. Sayf also testified that Abdulkadir was on the phone at the station and that Abdulkadir stated that he

would get them a ride. Moreover, Abdulkadir can be seen on the video surveillance camera speaking on his phone. Both Sayf and Abdulkadir also testified that they and Brandon waited at McDonald's for the ride. This testimony was corroborated by Detective Byerson who testified that the TextMe app from Brandon's cellular phone indicated that Brandon's phone last accessed an Internet Protocol address associated with the McDonald's at Loehmann's Plaza.

Between 11:40 and 11:55 p.m., an exterior video surveillance camera at the Giant grocery store at Loehmann's Plaza recorded the headlights of what appears to be two vehicles in the parking lot. *See* GEs 12-11A to 12-12B. Brandon is recorded on the video walking with Sayf towards the Giant from McDonald's. On the video, something causes Brandon to turn his head and look toward the headlights. Brandon and Sayf then walk in the direction of the headlights. The video shows a glimpse of some type of motion and Brandon involved in an altercation. In the video, Brandon appears to bend over and then back up. Brandon then disappears in the video. Sayf is seen walking away toward the McDonald's. The video shows two cars depart the parking lot, first a white car and then a blue car.

Sayf, Fahad, and Aagesen testified consistent with the video surveillance footage. Sayf testified that he and Brandon walked together, while Abdulkadir walked toward two cars parked near the Giant. According to Sayf, when Brandon saw the two cars, Brandon asked Sayf if they were the "Asians." Sayf lied and responded no. Abdulkadir then waved them over to the cars. As they were getting closer, Brandon repeated, are they the "Asians." Sayf again said no. Sayf, Abdulkadir, and Aagesen testified that as Brandon got close to the two cars, Peter Le and Lamborn exited a vehicle. Sayf recalled that Peter Le and Lamborn were wearing blue gloves. Sayf, Abdulkadir, and Aagesen testified that Abdulkadir then grabbed Brandon and, together with Peter

15

Le and Lamborn, they forced Brandon into the blue car (although, Sayf testified it was the white car). Abdulkadir and Aagesen testified that Abdulkadir then entered the vehicle with Aagesen and the defendant, and the two vehicles drove off. Sayf returned to the McDonald's, and then took an Uber to the Hyway Motel.

Kevin Aagesen further testified that he was collecting money for Peter Le on January 31, 2019, and was planning on delivering the money to Peter Le that evening. Sascha Carlisle, whom he knew as Wolf, picked up Aagesen at his parent's house in Woodbridge, Virginia, and the two of them drove to Peter Le's apartment in Dunn Loring, Virginia. When they arrived, Peter Le was alone in the apartment. Aagesen testified that Lamborn and the defendant arrived at the apartment sometime later. They went into a bedroom with Peter Le, while Aagesen and Carlisle smoked marijuana in the living room. About five to ten minutes later, Peter Le, the defendant, and Lamborn came out of the bedroom, and they told Aagesen that he had to give the defendant a ride to a McDonald's near a grocery store. Lamborn then handed Aagesen the keys to a white SUV.

Aagesen testified that he and the defendant, in the white SUV, followed Carlisle, Peter Le, and Lamborn, in the Subaru, to Loehmann's Plaza. During the drive, the defendant told Aagesen that they were going to beat up a young kid in the parking lot. After they arrived at the strip mall and parked, Aagesen observed Lamborn and Peter Le force Brandon into the blue Subaru. Aagesen stated that Abdulkadir, whom he knew as Slick, got into the white SUV with Aagesen and the defendant. Aagesen then followed the Subaru out of the parking lot.

Aagesen and Abdulkadir testified that he followed the Subaru south on Interstate 95 past Fredericksburg to the Richmond area. During the trip, the defendant directed Aagesen and Abdulkadir to turn off their phones. Aagesen testified that he had previously turned off his phone

16

because he could sense something was going down that evening. At one point, though, they were separated from the Subaru, and the defendant had a phone conversation with someone in the Subaru to get directions. Aagesen testified that he observed the defendant with a gun during the journey south.

Aagesen further testified that when they arrived in the Richmond area, he followed the Subaru to a quiet round-about, and both cars parked. Both Aagesen and Abdulkadir testified that the defendant, Peter Le, and Lamborn walked Brandon into the woods. A few minutes later, Aagesen and Abdulkadir heard gunshots. Aagesen and Abdulkadir then observed the defendant come running out of the woods and enter their vehicle. Aagesen and Abdulkadir also saw Peter Le and Lamborn run out of the woods without Brandon and enter the Subaru. Inside the white SUV, Aagesen observed the defendant pull out a silver semi-automatic pistol and wrap it in a jacket. The defendant put the jacket and gun into a trash bag that was on the floor of the SUV. He told Aagesen that "it was the craziest shit he has seen in his life" or words to that effect, and to forget about this night and never talk about it again. Aagesen also recalled the defendant telling Abdulkadir that he would get his money.

When they were driving back north, Aagesen initially followed the blue Subaru. At a traffic light, he observed Lamborn exit the Subaru and discard something into a storm drain. At a later point, the vehicles separated because Aagesen needed to get gas. When they arrived in Northern Virginia, Aagesen dropped off Abdulkadir near his girlfriend's apartment. Aagesen and the defendant then drove to Sang Huynh's Airbnb rental in Fort Washington, Maryland, where the defendant was staying. According to Aagesen, Lamborn was also at the house that evening, and he returned the keys to the white SUV to Lamborn. At the rental house, Aagesen saw the defendant

17

put the trash bag containing the jacket and pistol in a room at the house. Aagesen then took an Uber ride back to his parents' house in Woodbridge.

After the murder, both the defendant and Lamborn provided details to other gang members. Spencer Pak, Richard Pak's younger brother, was the defendant's best friend. According to Spencer Pak, the defendant had previously spoken to Spencer Pak about Brandon White before Brandon was killed. Spencer Pak knew that Brandon owed the defendant money and that David Nguyen had beat up Brandon at the defendant's direction. The defendant informed Spencer Pak that Tony Le and Kyu Hong told him that the only way to keep Brandon quiet was to pay him or kill him. Spencer Pak indicated that the defendant was frustrated because Brandon refused his offers of money. The defendant told Spencer Pak that two "black guys" had picked up White; that they transferred him to another car; that they drove to Richmond; that Peter Le, Lamborn, and the defendant took Brandon into the woods; that Peter Le gave the defendant a knife, which he then used to stab Brandon; and that Lamborn then shot him.

Additionally, Soung Park testified that he was present at Sang Huynh's Airbnb on the evening of Brandon's kidnapping. That evening, he spoke with both the defendant and Lamborn and asked to join them on their "mission." The defendant and Lamborn told Park that they did not need his help. Park testified that he called both throughout the evening because he was concerned about them, but ultimately their phones appeared to be turned off. Park testified that he was present a few days later, when the defendant was speaking with Gang Member 1 at Gang Member 1's Airbnb. Both Park and the defendant were also staying at this Airbnb. Park testified that the defendant appeared out of it and "fucked up" and that Gang Member 1 kept pressing the defendant on what happened to Bheem (Brandon's nickname). Ultimately, the defendant stated that it was

18

all messed up or fucked up.

Then later that day or another day, Lamborn came to Gang Member 1's Airbnb. Park testified that he was present when Lamborn explained to Park, the defendant, and Gang Member 1, how Brandon was not supposed to be at a gas station but that he, Peter Le, the defendant, Little Ahk (Abdulkadir), and Little Ahk's counsin (Sayf) were there. They had to improvise and Lamborn forced Brandon into the car, and they drove off. Lamborn further stated that he, Peter Le, and the defendant took Brandon into the woods, that he was stabbed, and that Lamborn told the defendant and Peter Le to run and then shot Brandon. They then left Brandon's body. The defendant was present during this entire conversation and did not speak.

After this conversation, Park asked the defendant if he needed help getting rid of the evidence. The defendant then provided Park with the clothing worn during the murder and the knife. Park used a burn pit at a friend's house to burn the clothing, and he then buried the knife near his father's home. After he started cooperating, he went with law enforcement to this location; however, he was unable to locate the knife.

After the initial round of arrests on February 15, 2019, Lamborn made plans to try to conceal Brandon's body, which was left in the woods. Kyu Wu Hong (a/k/a Starter) testified that he invited Lamborn to stop in Dallas, which Lamborn did. Lamborn told Hong about the kidnapping and murder. Hong was previously aware that Brandon owed the defendant money, and that David Nguyen had beat up Brandon over the debt. Hong also knew that the defendant had tried to pay off Brandon, but he refused the money and "snitched" on Nguyen. During this same period, Soung Park, who distributed cocaine on Hong's behalf for years, was also present with Hong and Lamborn in Texas. Ultimately, all three traveled back to Richmond, Virginia. Both Hong

and Park testified consistently about Lamborn, Hong, Park, and another gang member's role in moving Brandon's remains. Law enforcement finally discovered Brandon's remains in December 2019.

Further, Angel Le was Peter Le's girlfriend. She was intimately involved in Peter Le's marijuana trafficking. She rented the apartments they used. She also accepted payments for drugs, counted money, and laundered drug proceeds. Angel Le testified that Peter Le went out the evening that Brandon was kidnapped. She further testified that she heard the defendant, Lamborn, and Aagesen's voices in their shared apartment that same evening; though, she was in her room and only observed Peter Le in the apartment that evening. She further testified that Peter Le was not home when she went to bed later that evening but that he returned by the time she woke up in the morning.

Finally, after law enforcement arrested Peter Le and other gang members, the defendant made plans to flee the area. He stopped at a cooperating witness' home and stole his driver's license. He then fled Northern Virginia for Southern California. Upon arriving, Tony Le sent the defendant to the "farm" in Hayfork. The defendant stayed in hiding on the farm until law enforcement's search in July 2019. The defendant was able to flee the farm before law enforcement count arrest him; however, law enforcement was able to arrest him shortly thereafter.

The witness testimony, forensic evidence, and cellular location records proved beyond all doubt that Peter Le, the defendant, and Lamborn brutally kidnapped and murdered Brandon by repeatedly stabbing him and shooting him in the back three times.

II.     Analysis of the Sentencing Factors

In addition to the properly calculated guideline range, this Court is also required to consider

the sentencing factors identified in 18 U.S.C. § 3553(a). For the reasons stated below, those factors weigh in favor of imposing a sentence of life imprisonment for Counts 3 and 5.

    A.    <u>The Defendant Has Caused Severe Suffering</u>

First, and most importantly, the defendant's actions were callous and have caused severe suffering. The defendant took the life of another human being. For this reason alone, the defendant must be severely punished. The defendant through his actions inflicted extreme suffering on Brandon White's mother, grandmother, and siblings. Brandon spent a great deal of time with his grandmother, and it was her home that he left that fateful evening to enter the Mercedes containing Abdulkadir and Sayf. Brandon's grandmother was never the same after his death and tragically passed away prior to trial. Brandon's mother has conveyed to this Court — and we anticipate that she will again convey to this Court —the intense pain and sorrow she and other family members feel. However, a mother can never convey in writing or through spoken words what it feels like to lose a child. Each day, Brandon's mother struggles to deal with the pain of losing her son, and it is not a pain that will ever go away.

Moreover, Brandon did not die instantly from his wounds. To the contrary, Dr. Tal Simmons testified in painstaking detail that Brandon was repeatedly stabbed and shot three times in the back. We also know that it was the defendant who stabbed Brandon on 13 occasions, including all around his head and eye socket. And Dr. Jeffery Gofton testified that Brandon would not have died instantly, but rather that he would have laid there drowning in his own blood for several minutes before he died. Brandon therefore spent the final minutes of his life alone, scared, and unable to call for help.

Finally, Brandon's murder was a premeditated and deliberate act of violence meant to

bolster the defendant's position in the gang and send a chilling message to other individuals who would dare testify against gang members. Through his brutal actions, the defendant displayed his wanton disregard for the value of human life and reaffirmed his commitment to the Tigers organization.

      B.    <u>The Defendant is a Danger to Society</u>

Second, the defendant is a danger to society. The defendant was a longstanding and committed leader of a violent street gang. The defendant furthered the goals of this violent street gang by distributing large quantities of drugs while armed, renting Airbnb's — even after his friend was murdered by a gang member at one of the Airbnb locations that he rented, taking part in jump ins, and intimidating and threatening those who owed drug debts. Moreover, the defendant understood each of these violent acts was part of a pattern, and that gang members regularly engaged in violent acts, including arsons and assaults. Further, through his drug trafficking, preying on juveniles, and intimidating acts the defendant strengthened the gang and enabled it to continue in it is violent activities.

Further, the defendant was well aware that the gang sold thousands of pounds of marijuana and operated a multi-million dollar drug business. The defendant's actions were critical to ensuring the distribution of thousands of pounds of marijuana and the laundering of drug proceeds. The defendant also actively marketed and sold controlled substances to students. Minors consuming controlled substances has the potential to interfere with their schooling and lead to lower achievement levels. Indeed, many of his co-defendants and other cooperators in this case dropped out of school or were expelled because of their drug trafficking. And students failing to achieve their potential in high school can have serious consequences for the student, their family, and

society.

Moreover, the defendant has no excuse for his actions. He grew up in a safe home in Centreville and had access to good schools. The defendant had many other options; however, he chose to become a committed and armed drug trafficker, and ultimately a murderer.

C.       The Defendant's Sentence Must Deter Others

Third, and it goes without saying, that this case strongly implicates the need to impose a sentence that will deter others. The defendant is not the first, and he will not be the last, violent gang member who considers threatening and ultimately murdering cooperators and witnesses. Indeed, over nearly a decade, Reccless Tiger members assaulted and committed fire bombings to silence those who sought law enforcement protection. Thus, the defendant's sentence must send a message to other violent gang members in our district that silencing witnesses will have severe consequences.

D.       The Defendant Has Shown No Remorse for his Crimes

Finally, the defendant has shown no remorse for his conduct. At no point, in the long history of this case, has the defendant ever expressed any remorse, regard, or concern for the harm that he inflicted on Brandon and his family. Indeed, after he committed the murder and learned of Peter Le's arrest, he stole a cooperating witness' driver's license, absconded, and attempted to hide from law enforcement on the "farm" in Hayfork, California. Thus, when given the chance to come forward and help Brandon's family, he chose to flee and protect himself.

III.    Recommended Concurrent Sentences

The defendant stands convicted of six counts and we recommend that all sentences run concurrently. While the mandatory life imprisonment sentences for Counts 3 and 5 will ultimately

determine the defendant's fate, this Court must impose a sentence on each Count. Considering the 3353(a) factors discussed above, including the defendant's role as one of the most committed gang members, we believe this Court must avoid unwarranted sentencing disparities by imposing the sentences detailed in the table below.

| Count Number | Description | Guidelines | Recommended Sentence |
|---|---|---|---|
| Count 1 | Racketeering Conspiracy | Any term of years or Life | Life |
| Count 3 | Murder in Aid of Racketeering Activity | Life | Life |
| Count 4 | Conspiracy to Kidnap | Life | Life |
| Count 5 | Kidnapping Resulting in Death | Life | Life |
| Count 6 | Conspiracy to Distribute Controlled Substances | Life | 20 years |
| Count 7 | Killing While Engaged in Drug Trafficking | Life | Life |

The sentence recommended in Count 6 reflects that Peter Le and Tony Le were responsible for distributing greater drug weight; though, this drug weight was foreseeable to the defendant. This sentence places the defendant on par with Kyu Hong, who distributed a larger quantity of drugs but also pleaded guilty and accepted responsibility for his actions. Further, Kyu Hong did not murder an individual to further the goals of the drug trafficking conspiracy.

IV.   <u>Conclusion</u>

In light of the seriousness of the defendant's actions and his need for specific deterrence, a term of life imprisonment for Counts 3 and 5 is appropriate. Such a sentence would account for the nature of the defendant's crimes, protect the public from the defendant, and serve as a deterrent to other gang members who would silence witnesses seeking law enforcement help and protection.

Respectfully submitted,


Jessica D. Aber
United States Attorney


By:   _____/s/_____
Carina A. Cuellar
James L. Trump
Ryan Bredemeier
Assistant United States Attorneys
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:   (703) 299-3700
Fax:      (703) 299-3980
E-mail:   carina.cuellar@usdoj.gov