IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Docket No.: 1:19-CR-57 |
| | : | The Honorable Liam O'Grady |
| YOUNG YOO | : | |
| Defendant. | : | |

DEFENSE POSITION ON SENTENCING

COMES NOW YOUNG YOO, Defendant in the above-styled case, by and through Counsel, and hereby presents this Court with his position on sentencing.

On May 6, 2022, the jury returned verdicts of Guilty on Counts 1, 3-7 and Not Guilty on Count 13 of the Fourth Superseding Indictment. According to his Amended Presentence Report, Mr. Yoo's Offense Level is 43 and his Criminal History Category is I. A sentence of lifetime imprisonment without the possibility of parole is mandated by statute.

I. OBJECTIONS

A. <u>A mandatory life without parole sentence violates Mr. Yoo's rights under the Eighth Amendment of the U.S. Constitution</u>

To determine whether punishment is cruel and unusual under the Eighth Amendment, courts look to "the evolving standards of decency that mark the progress of a maturing society", *Estelle v. Gamble*, 429 U.S. 97, 102 (1976), and it is beyond question that our societally evolving standards of decency recognize that "…children are constitutionally different from adults for the purposes of sentencing." *Miller v. Alabama*, 567 U.S. 460; 132 S. Ct. 2455 (2012). Their " 'lack of maturity' " and " 'underdeveloped sense of responsibility' " lead to recklessness, impulsivity, and heedless risk-taking. *Roper v. Simmons*, 543 U.S. 551, 569 (2005). They "are more vulnerable . . . to

negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment"; and lack the ability to extricate themselves from horrific, crime-producing settings. *Id.* These qualities often result in impetuous and ill-considered actions and decisions. *Roper supra* at 569 (citing *Johnson v. Texas*, 509 U.S. 350, 367 (1993)).

The Court has also recognized the scientific reality that the "parts of the brain involved in behavior control continue to mature through late adolescence." *Graham*, 560 U.S. at 68; that adolescence is more than a chronological fact; and that the undeniable biological differences "that distinguish juveniles from adults do not disappear when an individual turns 18." *Roper*, 543 U.S. at 574." *Miller*, 132 S. Ct. 2467 (internal quotation omitted). Importantly, then, "none of what is said about children – about their distinctive (and transitory) mental traits and environmental vulnerabilities – is crime specific," for every juvenile inside or outside the criminal justice system goes through the same general biological processes. *Miller*, 132 S. Ct. at 2465.

According to an *amicus* brief from the American Psychological Association cited in *Miller*, 132 S.Ct. at 2465, studies have consistently confirmed that gains in impulse control continue into young adulthood, and "skills required for future planning continue to develop until the early 20s." *Brief for Amer. Psych. Assoc., et al. as Amici Curiae Supporting Petitioner, Miller v. Alabama*, 132 S.Ct.2455 (2012), p. 9-13. In short, "[E]xpecting the experience-based ability to resist impulses…to be fully formed prior to age eighteen or nineteen would seem on present evidence to be wishful thinking." *Id.* (internal quotation omitted).

Finally, the Court has recognized that a young person's character is not as "well formed" as that of an adult and his traits "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]". *Roper* at 570.

Given all of this, it is not surprising that he United States Supreme Court's rulings are evolving and recognize that a sentence of mandatory life without parole for a youthful offender is subject to constitutional limitation. In *Roper,* the Court held that it was a violation of the Eighth Amendment to sentence juvenile offenders to death. Soon after, in *Graham v. Florida, 560 U.S. 48 (2010)*, the Court held that the Eighth Amendment prohibited sentencing juveniles to life imprisonment without parole for non-homicide offenses. And in 2012, the Court in *Miller* banned the practice of sentencing juveniles to life without parole for any offense. 567 U.S. 460. The common thread throughout these holdings is the same: mandatory life imprisonment for youthful offenders is unconstitutional because it prevents the sentencing court from considering the defendant's age; family and home environment; the circumstances of the homicide event, including the extent of the defendant's participation; and (4) the incompetence of youth. *Miller,* 132 S.Ct. At 2467.

As the Presentence Report and government's investigation reveals, Mr. Yoo had virtually no meaningful adult supervision for most of his upbringing. He has been a heavy, heavy drug user since his early teens, which necessarily affected his cognitive development, and was barely out of his adolescence at the time of the homicide offenses for which he was convicted.

A mandatory life without parole sentencing scheme prevents the Court from considering these critical factors pertaining to his youth (which has proven to hold a special place in Supreme Court Eighth Amendment jurisprudence), his non-history of violent criminal convictions, and a substantial amount of other mitigation evidence, denying him any opportunity to have respective individualized sentencing determinations.

The mandatory sentence applied here is not unlike the mandatory sentencing schemes in

*Graham* and *Miller*, both of which were invalidated by the Supreme Court. Those cases recognized the dangers in mandatory sentences, such Mr. Yoo faces here:

> Such mandatory penalties, by their nature, preclude a sentence from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it. Under these schemes, every juvenile will receive the same sentence as every other – the 17-year-old and the 14-year-old, the shooter and the accomplice, the child from a stable household and the child from a chaotic and abusive one. And still worse, each juvenile […] will receive the same sentence as the vast majority of adults committing similar homicide offenses – but really, as *Graham* noted, a greater sentence than those adults will serve.

*Miller*, 132 S. Ct. at 2467-68.

As noted above, the statute at issue specifically precludes the Court from even considering these factors, putting it squarely at odds with the mandate of 18 U.S.C 3553(a) which instructs judges to consider a host of factors prior to imposing a sentence that is "sufficient, but not greater than necessary". Because the Supreme Court's reasoning in *Miller* also applies to Mr. Yoo any mandatory sentence for a youthful offender is by its rigidity cruel and unusual and violative of the Eight Amendment.

Furthermore, a mandatory sentence of life imprisonment without the possibility of parole inevitably leads to the sort of unconstitutionally disparate sentences which flow not from the consideration of the factors set forth in 18 U.S.C 3553(a) but from the virtually unchallengeable charging decisions made by individual prosecutors. By way of example, the Court's attention is drawn to Dan Slater's book, "Wolf Boys: Two American Teenagers and Mexico's Most Dangerous Drug Cartel." In this book, Mr. Slater exhaustively details how two teenagers, Gabriel Cardona and Rosito (Bart) Reta, worked as professionally trained hitmen for the Zeta cartel, which operated

in both the United States and Mexico.  As paid assassins, they earned approximately $500 per week and could earn upwards of $10,000 if they executed a particularly high value target.  Their biggest payday would have come from successfully executing Detective Robert Garcia, a Laredo, Texas police detective whom Los Zetas found particularly troublesome.  The bounty on his head, which the two attempted to collect, was $500,000.00.

The two were ultimately arrested in the midst of attempting to assassinate 40 of the top targets on Los Zeta's hit-list, and to do so all on the same day.  Before being arrested, however, they did manage to kill one high level target from the rival Sinola gang by spraying his car with approximately 90 bullets fired from various automatic weapons.

Law enforcement estimates that Reta alone was responsible for 30 murders and it is believed that, between the two of them and the crew of assassins they managed, they may be responsible for as many of 100 "disappearances".

The two were prosecuted by the United States Attorney's Office in Laredo and, despite being legitimate killing machines of the worst kind in the service of one of the most notorious criminal organizations on the world, were offered plea deals with no mandatory minimum sentences.  As a result, both escaped life imprisonment and were sentenced to a term of years.

So, to recap, Mr. Yoo, who was found guilty of participating in one death, must spend the rest of his life in prison while Cardona and Reta, members of Los Zetas who planned and executed as many as 30 people and took out a contract on a law enforcement officer, received a term of years.

B.    Obstruction of Justice

Mr. Yoo objects to the probation officer's determination that he obstructed justice.

CONCLUSION

WHEREFORE, Mr. Yoo submits that a mandatory sentence of life imprisonment without the possibility of parole in unconstitutional.  Mr. Yoo should be sentenced in accordance with the factors set forth in 18 U.S.C 3553(a) so that the Court may determine an appropriate sentence,

one that is "sufficient, but not greater than necessary" to achieve the purposes stated in 18 U.S.C. §3553(a) and one that is unconstitutionally disparate.

Respectfully Submitted,

YOUNG YOO
By Counsel

_____/s/_____
CHRISTOPHER AMOLSCH
VSB #43800
12005 Sunrise Valley Drive
Suite 200
Reston, Virginia 20191
703.969.2214 (Phone)
703.774.1201 (Fax)
chrisamolsch@yahoo.com (email)
Counsel for Mr. Yoo


_____/s/_____
Frank Salvato
Virginia Bar No.: 30453
1203 Duke Street
Alexandria, Virginia 22314
(703) 548-5000
(703) 739-0179 (fax)
frank@salvatolaw.com
Counsel for Mr. Yoo

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September, 2022 I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

_____/s/_____
CHRISTOPHER AMOLSCH
VSB #43800